IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| DENVER SUTTON AND ABNER SUTTON, INDIVIDUALLY AND AS THE NATURAL PARENTS AND GUARDIANS OF T.S., A MINOR<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL ACTION NO. 1:14-CV-00152 |

## AMENDED REDACTED COMPLAINT FOR DAMAGES

Plaintiffs Denver Sutton and Abner Sutton, Individually and as the Natural Parents and Guardians of T. S., a Minor, by and through their undersigned attorneys, hereby file their Amended Redacted Complaint for Damages against Defendant United States of America by showing as follows:

1.

This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346, 28 U.S.C. § 2671, and 28 U.S.C. § 2675. Jurisdiction is proper within this Court.

2.

The events, actions, omissions and negligence which give rise to the causes of action herein all occurred within the Southern District of Georgia. Venue is proper in this Court pursuant to 28 U.S.C. 1402 and 1391(e). Service may be perfected pursuant to Federal Rule of Civil Procedure 4(i)(1).

3.

Plaintiffs Denver Sutton and Abner Sutton are the natural parents and guardians of T. S., a minor.

4.

In 2009, Denver Sutton was a patient at Dwight David Eisenhower Army Medical Center for prenatal care in connection with her pregnancy with T. S.

5.

Physicians at Dwight David Eisenhower Army Medical Center diagnosed Denver Sutton as suffering from pregnancy-induced hypertension, and recommended an induction of labor.

6.

On July 14, 2009, Denver Sutton presented to Trinity Hospital in Augusta for indication of labor.

7.

Denver Sutton's induction was managed by family medicine physicians from Dwight David Eisenhower Army Medical Center, including and Dr. Steven Conner.

8.

Denver Sutton's labor induction began on the late evening of July 14. At or about 17:30 on July 16, 2009, the physicians artificially ruptured Denver Sutton's membranes.

9.

At or about 1:30 a.m. on ███████, Denver Sutton was noted to be in labor. Denver Sutton was noted to be completely dilated by the nursing staff at or about 12:30 p.m. on ███████, 2009.

10.

At or about 14:40, the fetal monitoring strip began to exhibit deep decelerations and poor variability.

11.

By approximately 15:30, the baby was showing signs of tachycardia, along with deep decelerations.

12.

Dr. Conner wrote a note in the chart at 19:35 on ▓▓▓ summarizing the delivery. His note states the patient progressed to being completely dilated at 13:45. She began pushing at 13:55. At 16:00, there was poor dissent, so he consulted Dr. Joseph of the Obstetrical department for concerns of arrest of labor. Dr. Conner specifically states the fetal heart rate tracing was reassuring at that point. He also states that prior to the arrival of Dr. Joseph, the baby began to show signs of variable decelerations and oxygen was started. His note further states that when Dr. Joseph arrived, the patient was completely dilated and that +3 station, and Dr. Joseph did a vacuum assisted delivery. Dr. Conner assumed responsibility for the care of the baby, including resuscitation.

13.

The physicians at Dwight David Eisenhower Medical Center, including specifically Dr. Conner, breached the standard of care applicable to physicians generally under the circumstances described above and, therefore, committed medical negligence, by failing to recognize signs of non-reassuring fetal heart tracings beginning at or about 14:40 p.m. on ▓▓▓; by failing to timely notify

Dr. Joseph, the obstetrician, of the non-reassuring fetal heart tracings; and by failing to ensure a timely delivery of T. S. occurred.

14.

At all times relevant hereto, Dr. Stephen Conner, and other family practice physicians from Dwight David Eisenhower Army Medical Center involved in the labor of Denver Sutton and the delivery of T. S. were employees and agents of the United States of America.

15.

As a direct and proximate result of the negligence of the defendants, T. S. was born without respirations and profound asphyxiated, required resuscitation and admission to the neonatal intensive care unit, and transfer to The Medical College of Georgia for a prolonged hospitalization.

16.

As a direct and proximate result of the negligence of the Defendants, T. S. incurred medical expenses, suffered great physical and mental pain and suffering, suffers from brain damage and permanent impairment, and is disabled.

17.

Plaintiffs Denver Sutton and Abner Sutton, Individually and as the Natural Parents and Guardians of T. S., a Minor, are entitled to bring this action to recover T. S.'s medical expenses through age 18 and for loss of services.

18.

Plaintiffs Denver Sutton and Abner Sutton, as the Natural Parents and Guardians of T. S., a Minor, are entitled to bring this action for a minor child's medical expenses after age 18, and for T. S.'s pain and suffering, disfigurement, disability, lost income, and all damages allowed by law.

19.

Plaintiffs Denver Sutton and Abner Sutton, Individually and as the Natural Parents and Guardians of T. S., a Minor seek to recover from the Defendants all past, present and future medical expenses, lost wages, mental and physical pain and suffering, permanent disability, disfigurement, and all other damages allowable by law.

20.

Plaintiffs attach hereto the Affidavit of John Yeast, M.D. in full compliance with O.C.G.A. § 9-11-9.1.

21.

On or about October 27, 2009, Plaintiffs presented to the proper agent of the Defendant two separate claims for damages and injuries by submitting Forms 95 as prescribed by the Department of Justice under 28 C.F.R. § 14.2. Plaintiffs filed a Form 95 claim for injuries their damages for T. S.'s medical expenses through age 18 and for their loss of services in the amount of $5,000,000, a copy of which is attached as Exhibit 1. Plaintiffs filed a Form 95 on behalf of their son T. S. for injuries he has or will sustain in the amount of $20,000,000, a copy of which is attached as Exhibit 2.

22.

To date, neither the Defendant nor its agents have denied the claim in writing and more than six (6) months have passed since the filing and receipt of the claim. Plaintiffs have received assurances that the claims are being evaluated and as a result of these assurances have held off filing a lawsuit for as long as possible. All administrative remedies have, therefore, been exhausted.

23.

WHEREFORE, Plaintiffs Denver Sutton and Abner Sutton demand judgment against the Defendant in the amount of $5,000,000, and Plaintiffs Denver Sutton and Abner Sutton, as parents and natural guardians of T. S., demand on behalf of their minor son judgment against the Defendant in the amount of $20,000,000.

This 17th day of July, 2014.

Respectfully submitted,

BY: S/HARVEY R. SPIEGEL
GEORGIA BAR NO. 672050
BY: S/PHILIP C. HENRY
GEORGIA BAR NO. 347975
HENRY SPIEGEL MILLING, LLP
ATLANTA PLAZA, SUITE 2450
950 EAST PACES FERRY ROAD, N.E.
ATLANTA, GEORGIA 30326-1386
(404) 832-8000
EMAIL: HRS@HSM-LAW.COM
EMAIL: PCH@HSM-LAW.COM


BY: S/GEOFFREY E. POPE
GEORGIA BAR NO. 583880
POPE & HOWARD, P.C.
945 E. PACES FERRY ROAD
SUITE 2525
ATLANTA, GA 30326
(404) 885-9999
EMAIL: GPOPE@POPEHOWARD.COM

BY: S/J. PETE THEODOCION
GEORGIA BAR NO. 703999
J. PETE THEODOCION, P.C.
507 WALKER STREET
AUGUSTA, GA 30901
(706) 722-3000
EMAIL:THEODOCION01@COMCAST.NET

*ATTORNEYS FOR PLAINTIFFS*